

**Dated: November 2, 2018**

**The following is ORDERED:**

Sarah A Hall
United States Bankruptcy Judge

_____

### UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BRANDON BURRIS, and | ) | Case No. 17-14813-SAH |
| TISHA BURRIS, | ) | |
| | ) | Chapter 7 |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| JASON BURRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. Pro. 18-01008-SAH |
| | ) | |
| BRANDON BURRIS, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER (i) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S  MOTION FOR SUMMARY JUDGMENT WITH BRIEF, AND WITH NOTICE OF OPPORTUNITY FOR HEARING [DOC. 21] AND (ii) DENYING DEFENDANT'S AMENDED COUNTER-MOTION FOR SUMMARY JUDGMENT WITH NOTICE OF OPPORTUNITY FOR HEARING [DOC. 33]

On October 1, 2018, plaintiff Jason Burris ("J Burris") filed his Plaintiff's Motion for

Summary Judgment with Brief, and with Notice of Opportunity for Hearing [Doc. 21] (the

"Motion"). In the Motion, J Burris requested entry of summary judgment against defendant Brandon Burris ("Defendant") on his claim under 11 U.S.C. § 523(a)(6)[1] on the basis of either collateral estoppel and/or the undisputed facts. Defendant filed his Defendant's Response and Amended Counter-Motion for Summary Judgment with Notice of Opportunity for Hearing [Doc. 33] on October 29, 2018 (the "Cross-Motion"), objecting to entry of summary judgment and seeking summary judgment. The matter has been fully briefed.[2]

## JURISDICTION

The Court has jurisdiction to hear the First Amended Complaint (the "Complaint") pursuant to 28 U.S.C. § 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409. Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a), and this is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(I).

## BACKGROUND

The parties to this adversary proceeding are siblings and only two of the many litigants involved in contentious and acrimonious probate litigation over their deceased father's estate. Here, J Burris seeks to except a state court judgment awarding him attorney fees against Defendant in the probate litigation from Defendant's discharge under Section 523(a)(6) for

---

[1] Unless otherwise indicated, hereafter all references to sections are to the Bankruptcy Code, Title 11 of the United States Code.

[2] Although J Burris has not yet filed a response or objection to the Cross-Motion, and no replies have been filed, none are necessary as the evidence in the record clearly reflects that Defendant's intent, a material element of a Section 523(a)(6) claim, remains at issue. Rather than prolong the briefing process and cause the parties to incur unnecessary time and expense in filing additional briefs, the Court concludes it is appropriate to expeditiously rule on the Motion and Cross-Motion so the parties can focus on preparing for trial of the matter which is scheduled less than four short weeks from now.

willful and malicious injury.  Defendant, naturally, disputes that his actions were neither willful or malicious.

Summary judgment is appropriate only if all of the pleadings, depositions, discovery responses, together with any affidavits, show that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (made applicable to this proceeding by Fed. R. Bankr. P. 7056).  Having considered the pleadings, the properly submitted summary judgment evidence, and the relevant legal authorities, the Court finds that neither J Burris nor Defendant has met his burden of demonstrating there is no genuine issue as to Defendant's intent to cause injury.  Therefore, neither party is entitled to full summary judgment in his favor.

## UNDISPUTED MATERIAL FACTS

As a result of procedural missteps by Defendant, the bulk of J Burris' "Material Facts" are undisputed and deemed admitted.  A general denial without more cannot be used to avoid summary judgment.  American Express Bank v. Mowdy (In re Mowdy), 526 B.R. 63, 70 (Bankr. W.D. Okla. 2015) (citing Sartori v. Susan C. Little & Assoc. P.A., 571 F. App'x 677, 680 (10th Cir. 2014) (citing Pasternak v. Lear Petroleum Expl., Inc., 790 F.2d 828, 834 (10th Cir. 1986))). "Under Rule 56, Fed. R. Civ. P. (as applicable pursuant to Fed. R. Bankr. P. 7056) and as well as the local rule, the non-moving party is required to controvert the material facts asserted by the moving party and to support that controversion with specific citation to the record consisting of pleadings, discovery, documents, affidavits and depositions.  Bank of Cushing v. Vaughn (In re Vaughn), 342 B.R. 385, 2006 WL 751388 (10th Cir. BAP 2006).  General denials without support are not a competent controversion of material facts, and it is not incumbent upon the court to sift

through the record for facts to support the controversion.  Rather, it is the non-moving party's obligation to locate and direct the Court to those facts and their support in the record.  Vaughn, 342 B.R. at 385."  Mowdy, 526 B.R. at 71 ¶29, n.1.

Defendant completely failed to support his denial of certain material facts alleged in J Burris' Motion that were properly supported by evidence in the record.  Therefore, the material facts, taken directly from J Burris' Motion, as set forth below (with some modifications to remove irrelevant facts and/or inflammatory and emotionally-charged language), are deemed admitted for purposes of summary judgment **and** for purposes of trial.

### Probate Proceeding Background

1. Ernest James Burris ("Decedent") died in 2009.  (Verified Petition, Exhibit 8, ¶ 1)

2. Dean Burris ("D Burris"), a son, filed a probate action on April 14, 2009, related to Decedent's Will, which appointed him as Executor ("PR").  (Verified Petition, Exhibit 8, ¶ 3, 4)

3. J Burris, also a son, was an heir under the Will. (Verified Petition, Exhibit 8, ¶ 6)

4. Defendant, also a son and an heir, is a licensed attorney admitted to the Oklahoma Bar on September 27, 2007.  (Verified Petition, Exhibit 8, ¶ 6; OSCN Docket Sheet, Exhibit 9)

5. Defendant objected to D Burris' appointment as PR contending that he was disqualified by a conflict of interest.  (the "PR Objection," Exhibit 10)

6. J Burris filed a Demurrer to the PR Objection.  (the "First Demurrer," Exhibit 11)

7. The court rejected the conflict of interest claim at an August 18, 2009 hearing (the "Conflict Hearing").  (Conflict Hearing Transcript, Exhibit 12, p. 98 ll. 15-17)

4

8.     At the hearing, Defendant changed arguments to claim that D Burris lacked "integrity" to

be PR under Okla. Stat. tit. 58, § 102.  (Conflict Hearing Transcript, Exhibit 12, p. 98 ll.

18-23)

9.     Defendant was authorized to file an amended PR Objection to pursue the integrity

allegation.  (Conflict Hearing Transcript, Exhibit 12, p. 12 - 13)

10.    At the Conflict Hearing, Defendant requested, and was authorized, to conduct discovery

limited to the singular issue of D Burris' integrity.  (Conflict Hearing Transcript, Exhibit

12, p. 16, ll. 8-16; p. 30, ll. 15-19)

11.    Defendant styled his amended objection as a petition, with seven "Causes of Action" (the

"Amended PR Objection").   (Exhibit 13)

12.    The Amended PR Objection described, in detail, the family conflict that resulted from

Decedent's failed marriage to the parties' mother.  (Amended PR Objection, Exhibit 13)

13.    Defendant's only change relevant to the "integrity" issue in the Amended PR Objection

was the vague and unsubstantiated claim that:

> 37.  Upon information and belief, and per [Decedent] prior to his
> death, Dean Burris has entered a plea for an offense which could
> constitute a felony.
>
> (Amended PR Objection, Exhibit 13, p. 7)

14.    A three-day hearing on the Amended PR Objection was held August 18, 19 and 23, 2010

(the "Integrity Hearing"). At its conclusion, the court found:

> "Be that as it may, the demur is sustained, his [Defendant's]
> objection will be dismissed on the basis that it completely lacks
> any foundation as it relates to lack of integrity."
>
> (Integrity Hearing Transcript, Exhibit 14, p. 37, ll. 17-18)

5

THE COURT: "The Court denies the objection of Brandon Burris. The Court finds Brandon Burris has wholly failed to prove a lack of integrity on behalf of Dean Burris as it relates to the request to prevent Gregory Dean Burris from being the Personal Representative. It's important that we say only the request of Brandon Burris, in case there is another request. The Court orders each party to pay their own fees, with the exception that attorney Mr. Dunham can make a request for fees if he desires within 30 days of this date on behalf of his client, Jason Burris from Brandon Burris. The Court specifically finds that there is bad faith on behalf of both Brandon Burris as well as Gregory Dean Burris. The Court grants both parties an exception to all of the Court's rulings and Order to be submitted by Mr. Poe. All right, does that reflect the Court's ruling, Mr. Poe?

MR. POE: Your Honor, if I could inquire just because I'm not sure I heard. Did you say the Order would find that Dean Burris was determined guilty of bad faith?

THE COURT: You know what, I will change that. The Court finds that both parties were equally uncooperative and as a result of which each party will pay their own fees with the exception of J. Dunham's fees to be paid upon application of Mr. Dunham on behalf of [J Burris] for fees to be paid by [Defendant].

(Integrity Hearing Transcript, Exhibit 14, p. 41, ll. 3-20)

### J Burris' Motion for Sanctions

15.    Thereafter, J Burris filed his Motion for Award of Costs and Fees; it was verified by counsel, having first-hand knowledge of the alleged facts. (the "Sanctions Motion," Exhibit 15)

16.    The Sanctions Motion rested upon the common law ability of a court to award fees "when a litigant has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."

(Sanctions Motion, Exhibit 15, p. 3)

17.  The Sanctions Motion highlighted Defendant's general use of unsupported allegations in his *pro se* pleadings to misrepresent his opponents to the court.  For example, Defendant made the following unsubstantiated allegations "upon information and belief" that D Burris had:

- committed perjury

- committed assault with a deadly weapon

- committed drug possession and distribution crimes

- committed murder, or had been complicit in a murder

(Motion for Continuance Pursuant to, Inter Alia, The Court's October 12, 2009 and November 12, 2009 Orders, Exhibit 16, p. 7, ¶ 6 and p. 9, ¶ 6)

18.  D Burris was then, and is, an assistant U.S. Attorney in the Eastern District of Oklahoma, and had passed a federal background check.  (Sanctions Motion, Exhibit 15, p. 2)

**Defendant's Deposition Scheduling Conduct**

19.  The Sanctions Motion focused on several categories of intentional, bad faith behaviors.  It first detailed Defendant's bad faith in scheduling J Burris' deposition prior to the Integrity Hearing.  (Sanctions Motion, Exhibit 15, p. 3)

20.  J Burris is an AT&T fiber optic network technician responsible for ensuring the seamless operation of AT&T facilities (e.g. server farms) essential to its global network. (Sanctions Motion, Exhibit 15, p. 5)

21.  J Burris' daily schedule is made known to him only one month out, on a rolling basis. Blocks as long as ten consecutive days "on" are common.  He is generally unable to schedule personal days more than 30 days out.  (Sanctions Motion, Exhibit 15, p. 5, 6)

7

22.    Defendant was advised about J Burris' job requirements from the outset.  (Sanctions Motion, Exhibit 15, attached Ex. B-1)

23.    But Defendant consistently demanded that J Burris pick dates more than a month out, making him decline and offer dates with which he could comply.  (Sanctions Motion, Exhibit 15, p. 6)

24.    At the Conflict Hearing, the Court ordered all deposition notices be given in 30 days, by September 17, 2009.  (Conflict Hearing Transcript, Exhibit 12. p. 83, l. 7 – p. 85, l. 6)

25.    Defendant's next request for deposition dates was September 14, 2009, four days short of the deadline; it asked for dates "for the first or second week of December and the first or second week of January."  (Sanctions Motion, Exhibit 15, p. 6 and its attached Ex. B-3)

26.    Defendant knew these proposed dates were far outside the 30-day window J Burris needed due to his job.  (Sanctions Motion, Exhibit 15, and its attached Ex. B-1)

27.    Two days later, still within the deadline for notice, J Burris offered two dates within the window, September 25 or 28.  (Sanctions Motion, Exhibit 15, and its attached Ex. B-4)

28.    Defendant rejected those dates, telling J Burris' counsel "for the reasons previously outlined in my email."  (Sanctions Motion, Exhibit 15, p. 6-7)

29.    In a response email, Defendant told counsel that he had noticed the deposition for December 8, 2009.  (Sanctions Motion, Exhibit 15, p. 7, and attached Ex. B-5)

30.    However, no email informing J Burris' counsel that the last week in September was unavailable was ever sent by Defendant, a fact pointed out by J Burris' counsel in an email to Defendant.  (Sanctions Motion, Exhibit 15, p. 7, fn. 2, and its attached Ex. B-6)

31. The discovery cutoff was extended to December 14, 2009, at Defendant's request. (Sanctions Motion, Exhibit 15, p. 7; OSCN Docket, Exhibit 18, entry dated 10-12-2009)

32. Regardless, J Burris still could not commit to the December 8 deposition date because it was outside the 30-day window, a fact Defendant knew when he picked it.  (Sanctions Motion, Exhibit 15, p. 7, and its attached Ex. B-1 and B-7)

33. J Burris then offered on October 14, 2009, to appear for deposition October 26 or 27. (Sanctions Motion, Exhibit 15, p. 7, and its attached Ex. B-7)

34. Defendant rejected the offer without explanation.  (Sanctions Motion, Exhibit 15, p.7, and its attached Ex. B-8)

35. J Burris responded October 20, removing October 26 (counsel acquired a conflict) and instead offering November 2.  (Sanctions Motion, Exhibit 15, p.7, and its attached Ex. B-9)

36. Defendant again refused the offered date in an email response consisting almost entirely of misrepresentations.  (Sanctions Motion, Exhibit 15, p. 7, and its attached Ex. B-10). The email's misrepresentations include:

> *"I have properly noticed [J Burris] for deposition pursuant to our agreement..."*

> There was no such agreement.  Defendant merely selected December 8 and sent notice.  (Sanctions Motion, Exhibit 15, p. 7, and its attached Ex. B-5)

> *"We have discussed: (a) your representation that [J Burris] has been forbidden from missing work in November, December, and January"*

> J Burris' counsel never made this representation.  He simply conveyed that [J Burris] could not commit to dates outside a rolling

9

30 day window.  Defendant knew of the issue, but repeatedly demanded deposition dates to which he knew [J Burris] could not commit.   (Sanctions Motion, Exhibit 15, p. 7, and its attached Ex. B-1)

*"We have discussed: (b) your prior representation on September 17th that the only day [J Burris] was available this year is September 25th"*

No such representation was made.  (Sanctions Motion, Exhibit 15, p. 7)

*"We have discussed [J Burris] (c) your representation now, on October 20, that the only day [J Burris]is available this year is October 27th"*

No such representation was made.  Counsel's October 20 email to Defendant not only reiterated the availability of October 27th, but offered November 2 as an additional potential date.  (Sanctions Motion, Exhibit 15, p. 7, and its attached Ex. B-9)

37.  Regardless, J Burris was prepared to be deposed in Tulsa on December 8, 2009, per Defendant's "notice."  (Sanctions Motion, Exhibit 15, p. 8)

38.  However, Defendant used an unrelated hearing on November 12, 2009, at which J Burris' counsel was not present, to extend the discovery deadline to February 12, 2010, and to obtain an *ex parte* order stating "JASON BURRIS'S DEPOSITION IS TENTATIVELY SCHEDULED FOR FEB. , 2010 AT 10:00 A.M., AS A "TARGET DATE."  (Sanctions Motion, Exhibit 15, p. 8; OSCN Docket, Exhibit 18, minute entry dated 11-12-2009)

39.  Defendant never informed J Burris about cancelling the December 8 deposition or about the Court-ordered February deposition "target" date.  (Sanctions Motion, Exhibit 15, p. 8)

40.  J Burris' counsel discovered the cancellation just days before the December 8 deposition. (Sanctions Motion, Exhibit 15, p. 8)

10

41.     A December 22, 2009, email sent directly to both J Burris and his counsel (which will be further addressed below) was the first time Defendant even mentioned a February deposition date.  (Sanctions Motion, Exhibit 15, p. 8, and its attached Ex. B-11)

42.     On March 5, 2010, Defendant filed his Motion for Continuance Pursuant to, Inter Alia, the Court's October 1, 2009, and November 12, 2009, Orders, wherein he asked that the March 25, 2010, Integrity Hearing be reset (the "Continuance Motion").  (Exhibit 16)

43.     Defendant used the Continuance Motion to misrepresent J Burris' efforts to schedule his Deposition and to portray J Burris as uncooperative.  (Sanctions Motion, Exhibit 15, p. 8; Continuance Motion, Exhibit 16, p. 2-6)

44.     In reality, between August 2009 and April 2010, J Burris offered Defendant six specific dates and the entire month of March 2010, for J Burris' Deposition in Tulsa.  For example, between late December 2009, and April 9, 2010:

•       J Burris asked for February 2010 dates upon which he could appear for deposition. B-12. Defendant offered February 11, 12, 18, or 19. When J Burris selected February 12 (B-14), Defendant replied that such date was "off the table."  (Sanctions Motion, Exhibit 15, p. 8, and attached Ex. B-15)

•       In response to a Notice of Deposition from Defendant, J Burris went to the Miami airport on February 12, 2010.  (Sanctions Motion, Exhibit 15, p. 8, and attached Ex. B-16) - Defendant noticed J Burris for a date he earlier said was "off the table," only to be informed that all regional airports were closed due to a snowstorm.  By counsel, J Burris immediately offered to appear the following Monday, February 15.  (Sanctions Motion, Exhibit 15, p. 8, and attached Ex. B-17)   Defendant declined.  (Sanctions Motion, Exhibit 15, p. 8, and attached Ex. B-18)

•       J Burris offered, consistently, to be deposed by telephone.  (Sanctions Motion, Exhibit 15, p. 8, and attached Ex. B-19)

11

- Once it was within the 30-day "wheelhouse," J Burris asked Defendant to select any day in March, 2010, to depose him. (Sanctions Motion, Exhibit 15, p. 8, and attached Ex. B-20)  Defendant declined to identify any such date.  (Sanctions Motion, Exhibit 15, p. 8, and attached Ex. B-21)

45.    In the Sanctions Motion, J Burris' counsel attached his timekeeping entries related to Defendant's bad faith in selecting a deposition date and requested sanctions against Defendant for those costs in the sum of $3,983.34.  (Sanctions Motion, Exhibit 15, p. 9; and it attached Ex. B-22)

### Defendant's Deposition Tactics

46.    Instead of conducting a serious and relevant inquiry about D Burris' integrity, Defendant deposed J Burris for over four hours on wholly unrelated topics, such as:  to determine which of his siblings might (many years ago) have taken a rifle from J Burris, how J Burris defined "integrity," whether J Burris preferred his father to his mother, and similar, irrelevant issues.  (Sanctions Motion, Exhibit 15, p. 9)

47.    A brief sampling of the irrelevant deposition questions include:

"Okay. Well, let me try again. In the past have you ever thought that Dean was either acting clueless or actually was clueless?" (J Burris' Deposition, Exhibit 19, p. 29, l. 8-11)

"Have you ever described our mother as the one who puts her desires to possess newspapers and junk over the well-being of her kids?"  (Sanctions Motion, Exhibit 15, p. 10, and its attached Ex. C-2)

"Have you ever stated, "Mom can let the divorce be over with Dad's death or she can keep the fighting going forever"? (Sanctions Motion, Exhibit 15, p. 10; and its attached Ex. C-3, which is J Burris Transcript, p. 116)

"Have you ever expressed your belief that what was taken from you was not a rifle, but the trust, compassion, and sense of security

that you should enjoy within your family, quote/unquote?"
(Sanctions Motion, Exhibit 15, p. 10, and its attached Ex. C-4,
which is J Burris Transcript, p. 123)

"Have you ever stated, quote/unquote, 'The missing rifle represents
another abuse that I have to suffer to be a part of this family?'"
(Sanctions Motion, Exhibit 15, p. 10, and its attached Ex. C-5,
which is J Burris Transcript, p. 124)

"Have you ever stated, 'Dean now denies knowing that Mom was
persecuting Brandon for the stolen gun, but I can recall one
occasion when Dean was present when Mom accused Brandon?'"
(Sanctions Motion, Exhibit 15, p. 10, and its attached Ex. C-6,
which is J Burris Transcript, p. 127)

"Have you ever -- have you -- has it ever been your opinion that
there were people that had no obligations to you, yet their food and
even love and affection had less conditions than what that woman
who claims to be our mother attached to hers?"  (Sanctions
Motion, Exhibit 15, p. 10, and its attached Ex. C-7, which is
J Burris Transcript, p. 130)

## Defendant's Direct Contact with Represented Parties

48.  After Jay Dunham ("Dunham") appeared in the probate case as J Burris' lawyer,

Defendant asked whether he should stop communicating directly with J Burris and

communicate only with Dunham.  (Sanctions Motion Exhibit 15, p. 11, and attached

Ex. D-1)

49.  Dunham said yes.  (Sanctions Motion, Exhibit 15, p. 11, and attached Ex. D-2)

50.  However, Defendant then intentionally communicated directly to J Burris in violation of

his agreement to stop and in violation of Oklahoma Rules of Professional Responsibility

4.2 ("Rule 4.2") in two subsequent "batches."  (Sanctions Motion, Exhibit 15, p. 11-13)

51.   Defendant initiated the first "batch" when he sent a settlement demand to J Burris and other family members.  (Sanctions Motion, Exhibit 15, p. 11, and attached Ex. D-6 and D-7)

52.   At the bottom of the Exhibit D-7, Defendant told represented parties D Burris, J Burris, and Cherie Burns, to ". . . not respond without consulting with your attorney."  (Sanctions Motion, Exhibit 15, attached Ex. D-7)

53.   Defendant managed not to include J Burris in emails the next two weeks; however, on December 22, 2009, he again sent a settlement letter directly to J Burris and his counsel.  (Sanctions Motion, Exhibit 15, p. 12, and its attached Ex. D-8 and D-9)

54.   J Burris personally responded, telling Defendant his direct communication violated his ethical duties.  (Sanctions Motion, Exhibit 15, p. 12, and attached Ex. D-10)

55.   Defendant responded back to J Burris: "Thank you for your unsolicited legal opinion. I extensively reviewed the law regarding my ethical obligations before communicating with you."  (Sanctions Motion, Exhibit 15, p. 12, and attached Ex. D-11)

56.   Defendant initiated the second batch of direct communications to J Burris by an email on March 11, 2010.   It related to scheduling J Burris' deposition and was critical of J Burris and his counsel; Defendant copied the email to other family members and/or their counsel.  (Sanctions Motion, Exhibit 15, p. 12, and attached Ex. D-12)

57.   J Burris' counsel immediately demanded to know why it was sent directly to J Burris. (Sanctions Motion, Exhibit 15, p. 12, and attached Ex. D-13)

58.   This triggered an exchange in which J Burris' counsel presented Defendant 18 cases and bar association ethic opinions from 15 jurisdictions – no pertinent Oklahoma authority

14

was found – that clearly prohibited Defendant's conduct.  (Sanctions Motion, Exhibit 15, p. 12, and attached Ex. D-14)

59.    Defendant's response offered only his own interpretation of Comment 4 to Rule 4.2, and then offered to cease direct communications with J Burris only if Dunham agreed to follow Defendant's instructions in communicating with his own client.  (Sanctions Motion, Exhibit 15, p. 12, and attached Ex. D-15)

60.    That response was also sent to J Burris and triggered J Burris' Motion for Injunctive Relief, in which J Burris relied on Rule 4.2 to ask the court to stop Defendant's intentional contact.  (Sanctions Motion, Exhibit 15, p. 12, Motion for Injunctive Relief, Exhibit 20)

61.    Defendant then filed his Response To Jason Burris' Motion For Injunctive Relief, again citing only his own interpretation of Comment 4 to Rule 4.2 as authority; he cited no cases or other legal authority.  (Response to Motion for Injunctive Relief, Exhibit 21)

62.    The court granted J Burris' requested injunction in a Minute Order.  The Minute Order enjoined Defendant from any further direct communications with J Burris, citing Rule 4.2 as its basis.  (Minute Order, Exhibit 22).

## Defendant's Threat to File a Sanctions Motion

63.    After Defendant filed the Amended PR Objection, J Burris filed a Combined Demurrer and Motion to Dismiss on September 16, 2009 (the "Renewed Demurrer," Exhibit 23)

64.    The Renewed Demurrer renewed J Burris' objections related to the repeated portions of Defendant's original PR Objection.  Given this similarity to the First Demurrer, which had been overruled, Defendant reasoned that the Renewed Demurrer was in bad faith and

15

threatened to move for sanctions against J Burris, or his counsel, pursuant to Okla. Stat. tit. 12, § 2011, if the demurrer was not withdrawn.  (Sanctions Motion, Exhibit 15, p. 13, and its attached Ex. E-1)

65.    J Burris' counsel entered into a dialogue with Defendant to explain why renewing his objections in the Renewed Demurrer was not frivolous.  (Sanctions Motion, Exhibit 15, p. 13, and its attached Ex. E-1 – E-7).

66.    Ultimately, Defendant filed no sanctions motion.  (Sanctions Motion, Exhibit 15, p. 14)

**Defendant's Behavior Violated the OBA's Standards of Professionalism**

67.    The Oklahoma Bar Association's Standards of Professionalism ("OBA-SOP") require that attorneys "not knowingly misstate, distort or improperly exaggerate any fact, opinion or legal authority."  OBA-SOP 1.2. They further require that lawyers' "conduct with clients, opposing counsel, parties, witnesses and the public will be honest, professional and civil."  OBA-SOP 1.6.

68.    One email from Defendant to D Burris' attorney speaks volumes of Defendant's goals in this case:

> . . . your client now faces the prospect of no less than two trials on his integrity and at least a year or two of litigation, depending on the appeals court, not including the two trials on his conflict of interest as to the bank accounts. . . Given this, it would be appropriate for your client to submit a reasonable settlement offer. . . .

> (Sanctions Motion, Exhibit 15, p. 15, and its attached Ex. F-1)

16

## Procedural History Following the Integrity Hearing

69.   The original probate judge was recused by the Supreme Court.  (Appeal No. MA109251 Order to Recuse, Exhibit 24)

70.   The case was then assigned to Judge Chappelle, who set all pending motions, including the Sanctions Motion, for hearing on August 10, 2011 (the "Sanctions Hearing").  (OSCN Docket, Exhibit 18, entry of 06-16-2011)

71.   Defendant then objected to the Sanctions Motion (the "Sanctions Objection"). (Exhibit 25)

72.   At the Sanctions Hearing, J Burris and Defendant were given a full opportunity to argue and present evidence related to the Sanctions Motion and Sanctions Objection.  (Appeal No. 112,918 Answer Brief, Exhibit 26, p. 4, ¶ 2; Sanctions Hearing Transcript, Exhibit 27)

73.   At the Sanctions Hearing, neither J Burris nor Defendant added any argument to their sanctions pleadings. Thereafter, the Court requested suggested findings and conclusions. (Appeal No. 112,918 Answer Brief, Exhibit 26, p. 4, ¶ 2; OSCN Docket, Exhibit 18, entry dated 08-10-2011)

74.   J Burris filed his Proposed Findings of Fact and Conclusions of Law on August 22, 2011 (Findings & Conclusions, Exhibit 28), and Defendant filed his on September 6, 2011 (Response to Findings & Conclusions, Exhibit 29).

75.   On September 16, 2011, the court granted the Sanctions Motion, sanctioning Defendant in the amount of $29,500.00, out of the of $29,508.34 requested by J Burris in the Sanctions Motion (the "Sanctions Judgment").  (Exhibit 30)

76. The Sanctions Judgment found that:

1. Defendant's litigation conduct toward J Burris in this matter has been, inter alia, wantonly vexatious and oppressive.

2. Defendant's litigation conduct toward J Burris in this matter has been, inter alia, in substantial bad faith;

3. Defendant's litigation conduct toward J Burris in this matter has been, inter alia, grossly and maliciously unprofessional, unethical, rude, insulting, abusive and uncivil;

4. Defendant's substantive legal position(s) in this matter has/have been at all relevant times utterly frivolous and without any factual basis whatsoever;

5. As a consequence of the foregoing, J Burris should be compensated, and Defendant Burris should be sanctioned, by monetary sanctions in the amount of $29,500.00.

(Sanctions Judgment, Exhibit 30)

77. Defendant then retained counsel for the first time, who filed a "Motion for New Trial or to Reconsider" (the "1st Motion to Reconsider," Exhibit 31)

78. Thereafter, J Burris filed a response (Response, Exhibit 32), to which Defendant filed a reply. (Reply, Exhibit 33)

79. The 1st Motion to Reconsider was denied. (Order, Exhibit 34)

80. Defendant filed an untimely appeal of that denial, which was dismissed for that reason. (Appeal No. 110,287 Order, Exhibit 35)

81. Defendant filed a second *pro se* "Motion to Reconsider Interlocutory Sanctions Judgment" pro se March 11, 2014 (the "2nd Motion to Reconsider," Exhibit 36).

82. J Burris responded to the 2nd Motion to Reconsider. (Response, Exhibit 37)

83. The 2nd Motion to Reconsider was denied. (Order, Exhibit 38)

84.     Defendant filed a third Motion For New Trial And Alternative Motions To Vacate And

      Reconsider (the "3rd Motion to Reconsider," Exhibit 39)

85.     The 3rd Motion to Reconsider was denied.  (Order, Exhibit 40)

86.     Defendant appealed both the fact, and amount, of sanctions (the "Sanctions Appeal"):

> F. The Court Erred in Awarding Sanctions Against Defendant in
> Favor of J Burris in the Amount of $29,500, and the Amount of the
> Sanctions is Unreasonable and Excessive

> (Sanctions Appeal Brief in Chief, Exhibit 41, p. 27)

87.     J Burris timely filed his Answer Brief.  (Sanctions Appeal Answer Brief, Exhibit 42)

88.     In affirming the Sanctions Judgment, the Court of Civil Appeals stated:

> [W]e agree with the trial court's award in this case. The order
> making the award made a specific finding as to the bad faith nature
> of [Defendant's] litigation in this probate, and our review of the
> record supports this conclusion. While the amount of the estate is
> small, [Defendant] burdened it with much unneeded animosity and
> made serious allegations against his siblings, their counsel, and the
> Special Administrator which had no basis in fact, law, or reality.

> (Sanctions Opinion, Exhibit 43, p. 12-13)

89.     Ultimately, the trial court entered a Journal Entry of Judgment awarding J Burris

      appellate fees of $15,960.00 (the "Appellate Fee Judgment").  (Exhibit 44)

90.     Defendant later filed the Second/Renewed Motion to Determine Outstanding Judgment,

      to determine the amounts owed to J Burris (the "Motion to Determine").  ( Exhibit 45)

91.     On November 14, 2017, the court found that the outstanding balances would be, as of

      December 8, 2017, $22,373.13 on the Sanctions Judgment and $15,358.88 on the

      Appellate Fee Judgment (the "Judgment Amount Order").  (Exhibit 46)

92.     Then, on December 7, 2017, J Burris filed a motion seeking an additional $15,259.09 in

        fees against Defendant incurred in collection efforts (the "Fee Motion").  (Exhibit 47)

**Mother's Judgment**

93.     Cherie Burns, the mother of J Burris and Defendant ("Mother"), obtained a judgment

        against Decedent's estate in the amount of $150,464.61.  (Defendant Exhibit 1)

94.     Decedent's estate was insufficient to satisfy the claims of Mother.  (Order/Final Decree,

        Exhibit 38)

## LEGAL AUTHORITIES AND CONCLUSIONS

**I.     SECTION 523(a)(6) EXCEPTS FROM DISCHARGE DEBTS RESULTING FROM WILLFUL AND MALICIOUS INJURY BY A DEBTOR.**

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by

the debtor to another entity or to the property of another entity."  To prevail under Section

523(a)(6), a creditor must prove both a willful act **and** a malicious injury.  Panalis v. Moore

(In re Moore), 357 F.3d 1125, 1129 (10th Cir. 2004).  Thus, an intentional tort is required, and

debts resulting from recklessness or negligence are not within the scope of Section 523(a)(6).

Barenberg v. Burton (In re Burton), 2010 WL 3422584, at *6 (citing Kawaauhau v. Geiger,

523 U.S. 57, 64 (1998)).  The Tenth Circuit applies a subjective standard in determining whether

a debtor desired to cause injury or believed the injury was substantially certain to occur.  Utah

Behavior Serv. Inc. v. Bringhurst (In re Bringhurst), 569 B.R. 814, 823 (Bankr. D. Utah 2017)

(citing Via Christi Regional Med. Ctr. v. Englehart (In re Englehart), 229 F.3d 1163 (10th Cir.

2000) (the willful and malicious injury exception focuses on the debtor's state of mind)).

The standard for a successful claim under Section 523(a)(6) is a stringent one and requires that the debtor's objectionable conduct must have caused "willful and malicious injury," i.e. "that the actor intend the *consequences* of an act, not simply the act itself." Berrien v. Van Vuuren, 280 F. App'x 762, 766 (10th Cir. 2008) (citing Kawaauhau, 523 U.S. at 61-62)). Because "the debtor must desire to cause the consequences of his act or believe that the consequences are substantially certain to result from it," Berrien, 280 F. App'x at 766 (citing Moore, 357 F.3d at 1129), a creditor must allege facts that support a reasonable inference that a debtor deliberately or intentionally caused injury to the creditor. Barenberg, 2010 WL 3422584, at *6 (citing Kawaauhau, 523 U.S. at 61).

To fall within Section 523(a)(6), the conduct must be not only willful but also malicious. Reperex, Inc. v. May (In re May), 579 B.R. 568, 593 (Bankr. D. Utah 2017) (citing Sierra Chems., LLC v. Mosley (In re Mosley), 501 B.R. 736, 744 (Bankr. D.N.M. 2013)); Tulsa Spine Hosp., LLC v. Tucker (In re Tucker), 346 B.R. 844, 854 (Bankr. E.D. Okla. 2006). "For a debtor's actions to be malicious, they have to be intentional, wrongful, and done without justification or excuse." Bertone v. Wormington (In re Wormington), 555 B.R. 794, 800 (Bankr. W.D. Okla. 2016) (citing Fletcher v. Deerman, 482 B.R. 344, 370 (Bankr. D.N.M. 2012); Tso v. Nevarez, 415 B.R. 540, 544 (Bankr. D.N.M. 2009) ("'Malicious' requires that an intentional act be 'performed without justification or excuse.'")); AVB Bank v. Costigan (In re Costigan), 2017 WL 6759068 (Bankr. E.D. Okla. 2017). "Malice may be implied where the preponderance of the evidence establishes that the debtor committed acts that were 'wrongful and without just cause.'" Costigan, 2017 WL 6759068, *5 (citing In re Jennings, 670 F.3d 1329, 1334 (11th Cir. 2012)).

21

To establish Defendant's willful and malicious intent in this adversary proceeding, J Burris relies primarily on the doctrine of issue preclusion, formerly known as collateral estoppel.[3]

## II.    ISSUE PRECLUSION CAN BE USED IN DETERMINING DISCHARGEABILITY.

The doctrine of issue preclusion bars relitigation of determinations necessary to the ultimate outcome of a prior proceeding. Bobby v. Bies, 556 U.S. 825, 129 S.Ct. 2145, 2149, 173 L.Ed.2d 1173 (2009). Issue preclusion prevents a party that has lost the battle over an issue in one lawsuit from relitigating the same issue in another lawsuit. Melnor, Inc. v. Corey (In re Corey), 583 F.3d 1249, 1251 (10th Cir. 2009). The doctrine of issue preclusion may be invoked to preclude relitigation of the factual issues underlying a determination of dischargeability. Nelson v. Tsamasfyros (In re Tsamasfyros), 940 F.2d 605, 606 (10th Cir. 1991); Grassmann v. Brown (In re Brown), 570 B.R. 98, 112 (Bankr. W.D. Okla. 2017).

The Full Faith and Credit Statute, 28 U.S.C. § 1738, directs federal courts to look to the preclusion law of the state in which a judgment is rendered. Cobb v. Lewis (In re Lewis), 271 B.R. 877, 883 (10th Cir. BAP 2002) (citing Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985)). In Oklahoma, issue preclusion may be invoked where a court has decided an issue of fact or law necessary to its judgment to prevent the same parties or their privies from relitigating that issue in a subsequent suit brought upon a different claim. Tibbetts v. Sight 'N Sound Appliance Ctr, Inc., 2003 OK 72, 77 P.3d 1042, 1061 (2003); Miller v. Miller, 1998 OK 24, 956 P.2d 887, 897 (1998). A party

---

[3]The Tenth Circuit refers to collateral estoppel as issue preclusion and res judicata as claim preclusion.

seeking to invoke issue preclusion "must show that the issue sought to be precluded was actually litigated and determined in the prior action . . . and that the determination was essential to the decision in the prior action." Miller, 956 P.2d at 897. An issue is actually litigated and necessarily determined only if: (i) it is properly raised in pleadings or otherwise submitted for determination in a prior action; and (ii) judgment would not have been rendered but for the determination of that issue. Oklahoma Dep't of Public Safety v. McGrady, 2007 OK 39, 176 P.3d 1194, 1199 (2007) (citing State ex rel. Oklahoma Bar Ass'n v. Giger, 2004 OK 43, ¶13, 93 P.3d 32, 38 (2004).

Oklahoma courts require a party relying on issue preclusion to "produce–as proof of its terms, effect and validity–the *entire* judgment roll[4] for the case which culminated in the decision invoked as a bar to relitigation." Salazar v. The City of Oklahoma City, 1999 OK 20, 976 P.2d 1056, 1061 (1999). Without the judgment roll, no court can determine with the requisite degree of certainty what claims were pressed for adjudication and which of the tendered issues were actually submitted and decided. Salazar, 976 P.2d at 1061-62. Failure to produce the judgment roll is fatal to a request that a prior judgment be given preclusive effect. Salazar, 976 P.2d at 1062. Oklahoma bankruptcy courts recognize that the party seeking to rely on a judgment for preclusive force has the obligation to produce the entire judgment roll for the case in which the

---

[4]The judgment roll includes the petition, the process, return, pleadings subsequent thereto, reports, verdicts, orders, judgments and all material acts and proceedings of the court. Salazar, 976 P.2d at 1061; Genoff Farms, Inc. v. Seven Oaks South, LLC, 249 P.3d 526, 530 (Okla. Ct. App. 2011) (judgment roll is the same as the record and is made up of the petition, process, return, the subsequent pleadings, reports, verdicts, orders, judgments and all material acts and proceedings of the court); Mahmoodjanloo v. Mahmoodjanloo, 2007 OK 32, 160 P.3d 951, 958, n.8 (2007).

judgment was entered.  <u>Brown</u>, 570 B.R. at 113; <u>Hall v. Bolton</u> (<u>In re Bolton</u>), 2017 WL 535265,

*2 (Bankr. E.D. Okla. 2017); <u>Factoring of Oklahoma, L.L.C. v. Means</u> (<u>In re Means</u>), 2006 WL

2847903, *5, n.12 (Bankr. N.D. Okla. 2006) (citing <u>Gouskos v. Griffith</u>, 122 F. App'x 965, 974

(10th Cir. 2005));  <u>Witaschek v. Sacramento Cty. Bureau of Family Support</u> (<u>In re Witaschek</u>),

276 B.R. 668, 676 (Bankr. N.D. Okla. 2002); <u>Marks v. Hentges</u> (<u>In re Hentges</u>), 373 B.R. 709,

726, n.13 (Bankr. N.D. Okla. 2007); <u>Cook v. Hill</u>, 169 F. App'x 513, 517 (10th Cir. 2006) (Tenth

Circuit recognized that failure to submit the entire judgment roll from previous litigation in

subsequent civil action is fatal to issue preclusion).

Here, J Burris is to be commended for successfully presenting the complete judgment roll

from the state court action[5] as required by Oklahoma law for application of issue preclusion, a

rare occurrence in this Court.  The Court sincerely appreciates the effort and time expended in

compiling the complete judgment roll, thus permitting the Motion and Cross-Motion in this

adversary proceeding to be considered using the doctrine of issue preclusion.  However, under

the particular nature and circumstances of this case, even the entire judgment roll is insufficient

to entitle either party to complete summary judgment in his favor.

## III.   **DEFENDANT'S INTENT UNDER SECTION 523(a)(6) REMAINS IN DISPUTE.**

As set forth in the undisputed facts above, the Sanctions Judgment made the following

findings and conclusions as to Defendant's conduct in the state court action:

1.     Defendant's litigation conduct toward J Burris was, inter alia, wantonly
       vexatious and oppressive.

2.     Defendant's litigation conduct toward J Burris was, inter alia, in
       substantial bad faith;

---

[5]The complete judgment roll fills a banker's box and contains just short of 5,000 pages.

3.      Defendant's litigation conduct toward J Burris was, inter alia, grossly and maliciously unprofessional, unethical, rude, insulting, abusive and uncivil;

4.      Defendant's substantive legal position(s) was at all relevant times utterly frivolous and without any factual basis whatsoever; and

5.      As a consequence of the foregoing, J Burris was awarded, and Defendant was sanctioned, in the amount of $29,500.00.

(Sanctions Judgment, Exhibit 30)  Unfortunately, this is the extent of the state court's findings and conclusions.  Although the court directed J Burris and Defendant to submit proposed findings of facts and conclusions of law at the close of a hearing, and both parties complied by making detailed submissions, the state court did not adopt either party's proposed findings or conclusions, and additionally, failed to issue any of its own (other than as set forth above).

Even with J Burris' submission of the entire judgment roll from the state court proceeding, application of the doctrine of issue preclusion to his Section 523(a)(6) nondischargeability claim is problematic for several reasons.  Initially, it is well-established that questions involving a defendant's state of mind or intent are ordinarily not appropriately resolved on summary judgment.  Nevarez, 415 B.R. at 544 (citing Gelb v. Bd. of Elections), 224 F.3d 149, 157 (2d Cir. 2000) and Bryant v. Tilley (In re Tilley), 286 B.R. 782, 792 (Bankr. D. Colo. 2002) (in dischargeability litigation "great circumspection is required where summary judgment is sought on an issue involving state of mind")).  Yet this is precisely what J Burris asks this Court to do, albeit based on the record from the state court action.

But the state court record, while substantial, lacks any findings and conclusions as to the intent underlying Defendant's conduct toward J Burris.  The state court's findings and conclusions on this issue are quite abbreviated.  In fact, the Sanctions Judgment points to no

specific evidence to support the legal conclusions made, and the legal conclusions make no reference to the applicable law or standards applied by the state court in reaching its conclusions. Moreover, the hearing conducted on the Sanctions Motion pertained almost entirely to other matters before the state court, specifically the special administrator's application for attorney fees and the appointment of the personal representative.  No arguments as to J Burris' request for sanctions, or Defendant's objections thereto, were heard, because the state court indicated it could rule on the "fee applications" on the pleadings, rather than taking evidence at the hearing. (Sanctions Hearing Transcript, Exhibit 27, pp. 63-65)

Compounding the problem for this Court is that neither the Sanctions Judgment nor the record before the state court on the Sanctions Motion address Defendant's state of mind or intent in connection with his bad faith, vexatious, oppressive, and/or frivolous litigation actions.  Stein v. McDowell (In re McDowell), 415 B.R. 601, 611 (Bankr. S.D. Fla. 2008) (a state court judgment awarding attorney fees based on bad faith does not satisfy the standard of Section 523(a)(6) without specific factual findings that the debtor acted both willfully and maliciously). The record is surprisingly silent as to any relevant case law or other authority discussing or describing the state of mind required for a conclusion of bad faith, vexatious or oppressive behavior.  In the absence of such, the Court has no basis for determining whether the intent inferred by the state court in sanctioning Defendant, if any, is equivalent to the required standard for nondischargeability of a debt under Section 523(a)(6).

The Court has independently surveyed relevant Oklahoma case law addressing the specific terminology used by the state court in the Sanctions Judgment.  Unfortunately, conflicting definitions of the terms were found, with some authorities finding their meaning to be

closer to negligence[6] rather than willful and malicious intent to injure, as required by Section 523(a)(6).[7]

Because material factual issues are disputed at the summary judgment stage, the Court must review the facts and draw reasonable inferences in the light most favorable to Defendant on the Motion, and in the light most favorable to J Burris on the Cross-Motion. Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). Although the propriety of Defendant's conduct in the state court action is more than questionable, evidence exists from which the Court can infer that Defendant's motives were, at least in part, to vindicate and protect his Mother and ensure that her judgment against Decedent's estate was paid. In sum, given: (i) the paucity of actual findings and conclusions by the state court, and specifically the absence of any finding regarding the intent behind Defendant's conduct toward J Burris; and (ii) the requirement that this Court view the facts in the light most favorable to the non-moving party, the

---

[6]Recklessly or negligently inflicted injuries are insufficient to meet the requirements under Section 523(a)(6). AVB Bank v. Costigan (In re Costigan), 2017 WL 6759068, *5 (Bankr. E.D. Okla. 2017).

[7]"'Wanton' is defined in Webster's New International Dictionary (1910 Ed.): '4. Reckless; heedless; malicious; as, wanton mischief.'" Smith v. State, 111 P.2d 198, 199 (Okla. Ct. Crim. 1941). "Under Oklahoma law, willful and wanton conduct is viewed as a type of tortious conduct that falls between gross negligence and intentional actions." Molitor v. Mixon, 2016 WL 9050778, *2 (W.D. Okla. 2016) (citing Parret v. UNICCO Serv. Co., 127 P.3d 572, 576 (Okla. 2005) (superseded on other grounds by statute)). "'"In bad faith' is not a technical term used only in actions for deceit. It is an ordinary expression, the meaning of which is not doubtful. It means 'with actual intent to mislead or deceive another.' It refers to a real and actual state of mind capable of both direct and circumstantial proof. A man may testify directly to his knowledge and intention if they are in issue, and they may also be inferred from circumstances. If a man makes a statement in the honest belief that it is true, he does not make that statement in bad faith, even if his honest ignorance of the truth is the result of the grossest carelessness.'" New York Life Ins. Co. v. Carroll, 7 P.2d 440 (Okla. 1932) (citing Continental Casualty Co. v. Owen, 38 Okl. 107, 131 P. 1084, 1088 (1932)).

Court concludes the complete resolution of this adversary proceeding by summary judgment is

not appropriate.  There is a genuine issue of material fact regarding whether Defendant's conduct

was willful, malicious and intended to harm J Burris, and accordingly, with respect to the intent

element of the Section 523(a) claim, the Court cannot grant summary judgment to either party.

However, the Court concludes that, on the basis of issue preclusion, it is appropriate to

grant summary judgment in favor of J Burris against Defendant as to the debt owed him under

the Sanctions Judgment and the Judgment Amount Order of $37,732.01 as of December 8, 2017.

As the party invoking the doctrine of issue preclusion, J Burris has demonstrated that both the

Sanctions Order and the Judgment Amount Order involve issues actually and finally litigated in

the state court action, and that the determination of the amount owed was essential to litigation

on the Sanctions Motion.  Miller, 956 P.2d at 897.  Therefore, no evidence will be required or

accepted at trial on these matters.  Furthermore, any undisputed fact set forth herein will not

require proof at trial.[8]  Fed. R. Civ. P. 56(g) (applicable pursuant to Fed. R. Bankr. P. 7056).  The

Court cautions counsel for J Burris and Defendant to streamline and tailor their presentation of

evidence at trial accordingly.

Trial of the remaining issues will commence on Thursday, November 29, 2018, at

9:30 a.m.

IT IS SO ORDERED.

#   #   #

---

[8]The undisputed facts set forth above should be included in the Final Pretrial Conference
Order in lieu of stipulated facts with a notation that they were determined on summary judgment.